U.S. DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

AUG 14 2014

JOHNSON, Clerk
Deputy Clerk

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| SUSAN MOJICA, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SECURUS TECHNOLOGIES, INC., <br><br> Defendant. | Civil Action No. 14-5258 TLB <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff Susan Mojica, individually and on behalf of all others similarly situated, brings this class action under the Federal Communications Act, 47 U.S.C. § 201, *et seq.*, (the "FCA") and the common law of unjust enrichment seeking damages, costs of suit, and other relief, against Defendant Securus Technologies, Inc. ("Securus" or "Defendant") for its unjust and unreasonable conduct from January 1, 2000, through the present (the "Class Period"). During the Class Period, Defendant charged exorbitant rates and fees—up to 100 times normal market rates—for telephone calls to and from inmates pursuant to exclusive contracts with correctional facilities throughout the United States. The Federal Communications Commission (the "FCC") has ruled these charges to be "unreasonably high, unfair, and far in excess of the cost of providing service."[1]

---

[1] *In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd. 15927, 15929 (F.C.C. Nov. 21, 2013) ("*Interstate Inmate Calling Servs. II*").

2. The FCC has also concluded that Defendant "exploited [its] economic position by charging rates for interstate calls greatly exceeding the cost of providing service, in direct violation of the requirements of Sections 201 and 276 of the [FCA] that those rates be just, reasonable, and fair."[2]

3. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.[3]

## PARTIES

4. Plaintiff Susan Mojica is a resident of Arkansas and paid unreasonable telephone charges for interstate calls to Defendant during the Class Period in order to communicate with a person incarcerated in a facility with telecommunications services operated by Defendant.

5. Defendant Securus is a privately held corporation headquartered in Dallas, Texas that provides managed telecommunications services at federal, state, and local correctional facilities in Arkansas and throughout the United States. By using these services, inmates can communicate with family members, friends, attorneys, and other approved persons outside the correctional facilities. Securus serves approximately 2,200 correctional facilities in forty-five states (including in Arkansas) and more than 850,000 inmates nationwide.

6. Securus was formed through the 2004 acquisition of Evercom Systems, Inc. ("Evercom") and T-Netix, Inc. ("T-Netix")—two inmate telephone service giants—by H.I.G. Capital, LLC, a Miami-based private equity firm with more than $1 billion of equity capital under management. Securus's predecessors consolidated a large portion of the industry through

---

[2] *Securus Techs., Inc. v. Federal Communications Commission*, No. 13-1280, Dkt. No. 1470786, p.1 (D.C. Cir. filed Dec. 16, 2013) (the "FCC Opp.").

[3] Counsel's investigation includes an analysis of publicly available pricing information, news articles, government investigations, reports and studies by academics and government agencies, and court records.

the acquisition of several inmate telephone service providers across the United States in the late 1990s.

## JURISDICTION AND VENUE

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this matter involves a federal question, *i.e.*, whether Defendant violated 47 U.S.C. § 201, *et seq.* The Court has supplemental jurisdiction over Plaintiff's state law claim because it arises from a common nucleus of operative facts and is such that Plaintiff ordinarily would expect to try both it and the claim involving a federal question in one judicial proceeding.

8. Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, and at least one Class Member is a citizen of a state other than that of Defendant.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that Defendant transacts substantial business within, and is subject to personal jurisdiction in, this District and thus "resides" in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims asserted herein took place in this District.

## DEFENDANT'S UNLAWFUL CONDUCT

10. Inmates are literally a captive market for Securus, which provides pay telephone services in prisons, jails, and other correctional facilities. As noted by the FCC, there are no competitive market forces to constrain the prices set by Securus.[4]

11. Defendant has secured for itself the right to provide telephone services to hundreds of thousands of inmates through exclusive contracts with thousands of correctional

---

[4] *See In re Rates for Interstate Inmate Calling Servs.*, 28 FCC Rcd. 14107, 14129 (F.C.C. Sept. 26, 2013) ("*Interstate Inmate Calling Servs. I*").

facilities. As a result of the monopolies created by these exclusive contracts, Securus faces little or no competition to challenge increasing telephone rates.[5]

12. In return for this monopoly power, Securus provides kickbacks, masqueraded as "commissions," to the contracting correctional facilities. For example, Securus reportedly gave $4.3 million in kickbacks to correctional facilities in Arizona and $5.15 million in kickbacks to correctional facilities in Florida.[6] As a result of these contracts providing kickbacks, Securus has served as the sole telecommunications provider for persons held in many federal, state, and county correctional facilities throughout the United States.

13. Because of its exclusive provider position, Securus is able to exploit Plaintiff and the Class by charging them unreasonably excessive rates for calls, as well as unconscionable and undisclosed fees and connection charges, without regard to what other providers of prepaid calling services are charging in the marketplace.

14. As a result of the absence of competition, "[f]amilies of incarcerated individuals often pay significantly more to receive a single 15-minute call from prison than for their basic monthly phone service."[7]

15. The market rates for competitively priced prepaid calling cards are approximately $0.01 to $0.02 per minute for calls within the United States. Similarly, prepaid calling card rates for international calls can be as low as $0.01 per minute, depending upon the country being called.

---

[5] See FCC Opp. p.3 (stating that "each provider is a monopoly in a given facility.").
[6] See Cecilia Kang, *FCC May Cut Prison Phone-call Prices*, THE WASHINGTON POST, Aug. 9, 2013.
[7] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14130.

16. Securus, however, charges vastly more—as high as $0.89 per minute—for calls within the United States, not including exorbitant per call connection fees. Securus likewise charges exorbitant per minute rates for international calls.

17. Illustrating the unreasonableness of the rates it charges, Securus purchases its minutes for calls terminating within the United States from connection carriers for less than a penny per minute. As a result, Securus often resells the minutes it buys at more than 100 times their cost to Plaintiff and the Class.

18. Indeed, when commission payments were removed from 2012 cost data provided by Securus to the FCC, its cost-per-minute rate was only $0.04, including all of its operational costs and call transmission costs.[8]

19. Further demonstrating how it takes advantage of these exclusive dealing contracts, Securus "charge[s] widely varying rates in the different facilities [it] serve[s], notwithstanding [its] ability to share the costs of serving multiple facilities using centralized call routing and management and security platforms."[9]

20. Payment of kickbacks by inmate telephone service providers (such as Securus) is substantial, with reports estimating that kickbacks paid to correctional facilities exceed *$103.9 million per year*.[10]

21. Plaintiff paid exorbitant and unreasonable rates changed by Securus for inmate telephone services during the Class Period and has been damaged thereby.

---

[8] See *Interstate Inmate Calling Servs. II*, 28 FCC Rcd. at 15945.

[9] *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14126.

[10] See Cecilia Kang, *FCC May Cut Prison Phone-call Prices*, THE WASHINGTON POST, Aug. 9, 2013.

## THE FCC DETERMINED THAT DEFENDANT'S CONDUCT VIOLATED THE FCA

22. As a result of this broken and unconscionable system, the FCC has determined that, throughout the Class Period, Securus "exploited [its] economic position by charging rates for interstate calls greatly exceeding the cost of providing service, ***in direct violation of the requirements of Sections 201 and 276 of the [FCA] that those rates be just, reasonable, and fair.***"[11]

23. On the basis of, *inter alia,* the conduct alleged herein, the FCC recently imposed a variety of limits on Securus's ability to continue to prey upon inmates and their families and friends.[12]

24. Among other things, the FCC concluded that:

- The FCA "requires that all carriers' interstate rates be just and reasonable. To be just and reasonable, rates must be related to the cost of providing service." *Interstate Inmate Calling Servs. II*, 28 FCC Rcd. at 15929-30; *see also Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14113-15 ("[a]ll charges … for and in connection with [interstate communication services], shall be just and reasonable").

- Under existing law, commission payments to correctional facilities are profit-sharing kickback arrangements and "are not a … category of … costs" recoverable from end-users in the rates charged for interstate telephone calls. *Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14135-37.

- Because correctional facilities grant the monopoly franchise partly on the basis of the commission payment offered, "competition" among providers produces increased commission payments and higher end-user charges. *See id.* at 14129.

- As a result, inmate telephone rates have "inflict[ed] substantial and clear harm on the general public (and not merely on private interests)" and must be rejected

---

[11] *See* FCC Opp. at p.1.

[12] *See Interstate Inmate Calling Servs. I*, 28 FCC Rcd. at 14129. Securus has exhausted its administrative remedies with the FCC and its attempt to stay the implementation of the FCC's recently imposed rate caps has failed. *See Interstate Inmate Calling Servs. II*, 28 FCC Rcd. at 15953 (refusing to stay implementation of rules); *Securus Techs., Inc. v. Federal Communications Commission*, No. 13-1280, Dkt. No. 1474764 (D.C. Cir. Jan. 13, 2014) (denying request to stay implementation of rate caps).

6

under existing legal precedent. *Interstate Inmate Calling Servs. II*, 28 FCC Rcd. at 15938.

- Thus, *"for many years, interstate [inmate telephone service] rates have been unreasonably high, unfair, and far in excess of the cost of providing service."* *Id.* at 15929-30 (emphasis added).

25. As demonstrated above, the FCC has unequivocally determined that Securus has, for many years, violated the FCA. In fact, as early as 1998 the FCC determined that inmate telephone service rates "must conform to the just and reasonable requirements of Section 201."[13] Accordingly, the FCC's September 2013 and November 2013 orders do not create a new obligation on Securus; rather, they simply confirm what Defendant's legal obligations have always been—obligations it violated throughout the Class Period.

## TOLLING

26. In 2000, a class action complaint was brought against several inmate telephone service providers alleging violations of the FCA based on some of the conduct alleged herein.[14] Additionally, current and former inmates petitioned the FCC as early as 2003 to address inmate telephone rates.

27. As a result of the ongoing FCC review of the rates, some courts have dismissed complaints alleging violations of the FCA, including the one filed in 2000, on the basis of "primary jurisdiction," and deferred judgment to the FCC and effectively stayed the cases pending the FCC's final determination.[15]

---

[13] See *Billed Party Preference For Interlata 0+ Calls*, 13 FCC Rcd. 6122, 6156 (FCC Jan. 29, 1998) (finding that inmate telephone rates "must conform to the just and reasonable requirements of Section 201").

[14] See *Wright v. Corrections Corporation of America, et al.*, No. 00-cv-0293-GK (D.D.C.).

[15] See, e.g., *Wright*, No. 00-cv-0293-GK, Dkt. No. 94 (D.D.C. Aug. 22, 2001) (dismissing class action complaint and concluding "the FCC is clearly in the best position to resolve the core issues in this case, namely the reasonableness of the rates charged" and noting that "[a]fter the FCC does so ... the Court will have the benefit of the agency's expert findings in addressing them").

28. As noted by U.S. District Judge Gladys Kessler in 2001, "the Court expects the [FCC] to move with dispatch to conclude its ongoing proceedings so as to provide both courts and parties with meaningful analysis and guidance on these issues."[16]

29. As alleged herein, the FCC has finally and conclusively determined that Securus violated the FCA—the "analysis and guidance" referenced by Judge Kessler.

30. As noted above, a finding of liability in this action would not be a "retroactive application" of a new law or regulation because the FCC has merely clarified existing law in its recent findings that Securus has violated the FCA.

31. Securus has thus been on notice since as early as 2000, and at least since 2003, that its conduct likely violated the FCA. There is no longer a risk of conflicting adjudications in private litigation given that the FCC has reached a final determination regarding Securus's conduct. As a result, the claims alleged herein are ripe for disposition.

## CLASS ALLEGATIONS

32. Plaintiff brings this action, on behalf of herself and all others similarly situated, as a class action pursuant to Fed. R. Civ. P. 23. Plaintiff seeks to represent a class, defined as follows:

> all persons in the United States who, at any time since 2000, have paid to use the telephone systems provided by Securus in order to make or receive telephone calls involving a person incarcerated in any state in the United States (the "Class").

33. This action is brought and properly may be maintained as a class action pursuant to the provisions of Fed. R. Civ. P. 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3) and satisfies the requirements thereof.

---

[16] *Id.*

34. The members of the Class are so numerous that individual joinder of all the members is impracticable. On information and belief, there are not fewer than tens of thousands of persons who have been affected by Defendant's conduct. The precise number of Class Members and their addresses are presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

35. Common questions of law and fact exist as to the Class, as required by Fed. R. Civ. P. 23(a)(2), and predominate over any questions that affect only individual Class Members within the meaning of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact include, but are not limited to, the following:

    a. whether Defendant has charged unreasonable and unjust telephone rates and fees;

    b. whether Defendant has charged telephone rates and fees that greatly exceed costs of providing service;

    c. whether Defendant has failed to fully and adequately disclose to Plaintiff and the Class telephone rates and fees that they will be, and have been, charged when Plaintiff and the Class make or receive telephone calls involving an incarcerated person;

    d. whether, through the acts and practices complained of herein, Defendant violated §201(b) of the FCA and regulations thereunder;

    e. whether, through the acts and practices complained of herein, Defendant was unjustly enriched; and

    f. whether Plaintiff and the Class have been damaged by Defendant's acts and practices complained of herein, and if so, the measure of those damages and the nature and extent of any other relief that should be granted.

36. Plaintiff's claims are typical of the claims of the Class she seeks to represent under Fed. R. Civ. P. 23(a)(3) because Plaintiff and the Class have been subjected to the same wrongful practices and have been damaged thereby in the same manner.

37. Plaintiff will fairly and adequately represent and protect the interests of the Class as required by Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because she has no interests that are adverse to the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and, to that end, Plaintiff has retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

38. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and each Class Member are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for each Class Member to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

39. In the alternative, this action is certifiable under the provisions of Fed. R. Civ. P. 23(b)(1) and/or 23(b)(2) because:

 a. the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Defendant; and

 b. the prosecution of separate actions by individual Class Members would create a risk of adjudications as to them that would, as a practical matter, be dispositive of the interests of the other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

40. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to Class Members on a mandatory, class wide basis.

41. Plaintiff is aware of no difficulty that will be encountered in the management of this litigation that will preclude its maintenance as a class action.

## COUNT I
### (Violation of The Federal Communications Act, 47 U.S.C. § 201, *et seq.*)

42. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

43. Under § 201(a) of the FCA, Defendant is a common carrier engaged in interstate wire communications for the purpose of furnishing such communication services.

44. The telephone rates and fees charged by Defendant, as alleged above, are unjust and unreasonable, and thus, violate § 201(b) of the FCA.

45. Defendant's failure to make full and adequate disclosures to their customers of these charges violates 47 CFR § 64.2401 and, therefore, violates § 201(b) of the FCA.

46. Defendant has not filed its rates with the FCC.

47. As a direct and proximate result of Defendant's violations of the FCA, Plaintiff and the Class have been damaged in amounts to be determined at trial.

## COUNT II
### (Unjust Enrichment)

48. Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

49. As a direct and proximate result of Defendant's acts and practices alleged herein, Defendant has been unjustly enriched and has obtained money, earnings, profits, and benefits

directly from Plaintiff and the Class to which Defendant is not otherwise entitled and which it would not have obtained but for their charging of rates and fees that are unjust, unreasonable, and greatly exceed market rates and costs of providing services.

50. Defendant's practices were intentional, knowing, malicious, or done with the intent to reap significant benefits at the expense of Plaintiff and the Class.

51. Defendant is not entitled to this enrichment, was prohibited from engaging in the acts and practices that generated this enrichment by § 201(b) of the FCA, and obtained this enrichment to the detriment of Plaintiff and the Class.

52. Plaintiff and the Class reasonably expected that they would only have to pay market rates and would not have to incur other charges which provide no commensurate benefit to them.

53. Plaintiff and the Class have suffered, and will continue to suffer, actual damages and injury—in the form of telephone rates and fees that exceed market rates and costs of providing services—as a result of Defendant's unjust retention of proceeds from their acts and practices alleged herein.

54. Under principles of equity and justice, Defendant should be required to restore the above-described unjust enrichment to Plaintiff and the Class in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter a judgment against Defendant and in favor of Plaintiff and the Class and award the following relief:

    a. Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(1), (b)(2), or (b)(3) on behalf of the Class as defined above;

    b. Declaration, judgment, and decree that the conduct alleged herein:

- Constitutes an unreasonable and unlawful act in violation of the FCA; and

- Unjustly enriched Defendant;

c. Damages to Plaintiff and the Class to the maximum extent allowed under state and federal law;

d. Costs and disbursements of the action;

e. Restitution and/or disgorgement of Defendant's ill-gotten gains;

f. Pre- and post-judgment interest;

g. Reasonable attorneys' fees; and

h. Such other and further relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all issues so triable.

August 14, 2014

Respectfully submitted,

_____
Amy C. Martin
**EVERETT WALES & COMSTOCK**
1944 East Joyce Boulevard
P.O. Box 8370
Fayetteville, AR   72703
Tel: (479) 443-0292
Fax: (479) 443-0564

**KESSLER TOPAZ
   MELTZER & CHECK, LLP**
Edward W. Ciolko
Peter A. Muhic
280 King of Prussia Road
Radnor, PA   19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Attorneys for Plaintiff*

13