IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SUSAN MOJICA, et al.                                              PLAINTIFFS

V.                          CASE NO. 5:14-CV-5258

SECURUS TECHNOLOGIES, INC.                                       DEFENDANT


and


KAYLAN STUART, et al.                                            PLAINTIFFS

V.                          CASE NO. 5:14-CV-5275

GLOBAL TEL*LINK CORPORATION                                      DEFENDANT


## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Securus Technologies, Inc.'s ("Securus") Partial Motion to Dismiss, Motion to Strike, and Motion to Stay or, in the Alternative, Motion for More Definite Statement (Case No. 5:14-cv-5258, Doc. 10) and Memorandum in Support, *id.* at Doc. 11, Plaintiff Susan Mojica's Brief in Opposition, *id.* at Doc. 18, Defendant Securus' Reply in Support, *id.* at Doc. 21, and Plaintiff Mojica's Sur-Reply in Further Response, *id.* at Doc. 24.  Also currently before the Court are Defendant Global Tel*Link Corporation's ("Global") Motion for Primary Jurisdiction Referral and Stay (Case No. 5:14-cv-5275, Doc. 16) and Memorandum in Support, *id.* at Doc. 17, Plaintiff Kaylan Stuart's Brief in Opposition, *id.* at Doc. 21, Defendant Global's Reply Memorandum in Support, *id.* at Doc. 23, and Defendant Global's Notice of Additional Authority, *id.* at Doc. 28.  A joint Case Management Hearing for both above-captioned cases was held on

January 22, 2014.[1]  After hearing oral argument on the Motions at the Case Management Hearing, the Court **DENIED** both Motions from the bench.  This Opinion and Order explains the basis for the Court's decision.  To the extent anything in this Order differs from what the Court stated from the bench, this Order will control.

## I.  BACKGROUND

On February 16, 2000, Martha Wright and other similarly situated individuals filed a class action complaint in the United States District Court for the District of Columbia against a host of defendants, including the instant defendants or their predecessors.[2] Among other things, the *Wright* complaint alleged that various telephone companies entered into exclusive agreements to provide telephone services to inmates at correctional facilities throughout the United States, and exploited those monopolies by charging unjust and unreasonable rates to recipients of phone calls from inmates in violation of 47 U.S.C. § 201(b), thereby unjustly enriching themselves.  On August 22, 2001, the D.C. District Court dismissed the *Wright* complaint without prejudice under the doctrine of primary jurisdiction.[3]  On November 5, 2001, that court granted a motion to reconsider by converting the dismissal to a stay, pending the resolution of related proceedings before the Federal Communications Commission ("FCC").  Those FCC proceedings lasted for more than a decade, and at some point during those proceedings the *Wright* lawsuit was administratively closed due to inactivity, without any class certification or dispositive order ever having been entered.

---

[1] These cases were consolidated solely for purposes of the Case Management Hearing and the Motions addressed in this Order.
[2] That case, *Martha Wright et al. v. Corrections Corporation of America et al.*, D.D.C. Case No. 1:00-cv-00293, is referred to throughout this Order simply as "*Wright*."
[3] The doctrine of primary jurisdiction is discussed in greater detail *infra*, in Section II.A.

Finally, on September 26, 2013, the FCC released its *Inmate Rate Order and Further Notice of Proposed Rulemaking* ("*IRO and FNPRM*"). The *IRO and FNPRM* did not specifically find that any of the *Wright* defendants had or had not committed any specific violations of law as alleged in the *Wright* complaint. However, the *IRO and FNPRM* made many findings about such practices in general, clearly indicated that the FCC viewed such practices as being unjust and unreasonable, and established an interim regulatory scheme designed to curb such practices prospectively—with that interim scheme ultimately to be replaced by a permanent one resulting from the further proposed rulemaking noticed in the *IRO and FNPRM*. Global and Securus challenged this interim scheme in the Court of Appeals for the D.C. Circuit, and petitioned the FCC to stay its implementation and hold in abeyance further rulemaking pending the resolution of that D.C. Circuit appeal. On November 21, 2013, the FCC denied their petitions. On January 13, 2014, the D.C. Circuit entered an order staying three provisions from the *IRO and FNPRM* pending resolution of the appeal, and refusing to stay any other provisions.[4]

On October 22, 2014, the FCC released a *Second Further Notice of Proposed Rulemaking* ("*FNPRM 2*") in order to develop a sufficient record to support the kind of comprehensive reform that could not be accomplished with the interim scheme set forth in the initial *IRO and FNPRM*. On December 10, 2014, the FCC (which is defending the *IRO and FNPRM* against the appeal in the D.C. Circuit) filed an uncontested motion to hold the D.C. Circuit appeal in abeyance pending the issuance of final rules pursuant to *FNPRM 2*, arguing that those final rules might moot the issues raised by the appellants.

---

[4] The three provisions that were stayed are codified at 47 C.F.R. §§ 64.6010, 64.6020, and 64.6060.

page 4 of 13

On December 16, 2014, the D.C. Circuit granted that motion; the appeal is currently being held in abeyance.

Meanwhile, the instant Class Action Complaints against Securus and Global were filed in this Court on August 14, 2014, and September 4, 2014, respectively.  Those Complaints each allege two causes of action: violation of the Federal Communications Act ("FCA") and common-law unjust enrichment.  Specifically, the instant Complaints allege that Securus and Global, respectively, entered into exclusive agreements to provide telephone services to inmates at correctional facilities throughout the United States, and exploited those monopolies by charging unjust and unreasonable rates to recipients of phone calls from inmates in violation of 47 U.S.C. § 201(b), thereby unjustly enriching themselves.

Securus filed a Partial Motion to Dismiss, Motion to Strike, and Motion to Stay or, in the Alternative, Motion for More Definite Statement (Doc. 10) and Memorandum in Support (Doc. 11) on September 15, 2014.  On October 17, 2014, Mojica filed a Brief in Opposition.  (Doc. 18).  Securus filed a Reply (Doc. 21) on October 24, 2014, and Mojica filed a Sur-reply (Doc. 24) on November 3, 2014.

Global filed a Motion for Primary Jurisdiction Referral and Stay (Doc. 16) and Memorandum in Support (Doc. 17) on November 20, 2014.  On December 12, 2014, Stuart filed a Brief in Opposition.  (Doc. 21).  Global filed a Reply (Doc. 23) on January 5, 2015, and a Notice of Additional Authority (Doc. 28) on January 16, 2015.  Both Defendants' Motions are now ripe for consideration.

## II. DISCUSSION

### A. Defendants' Motions for Primary Jurisdiction Referral and Stay

Both Global and Securus have asked the Court to apply the doctrine of primary jurisdiction to the FCA claims in their respective cases.  The doctrine of primary jurisdiction is a common-law doctrine that "allows a district court to refer a matter to the appropriate administrative agency for a ruling in the first instance, even when the matter is initially cognizable by the district court." *Access Telecomm. v. Southwestern Bell Telephone Co.*, 137 F.3d 605, 608 (8th Cir. 1998).  The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005) (internal quotation marks omitted).

"The contours of primary jurisdiction are not fixed by a precise formula." *Id.* Primary jurisdiction is typically invoked to make use of agency expertise, or to promote uniformity and consistency within the particular field of regulation. *Access Telecomm.*, 137 F.3d at 608.  The doctrine of primary jurisdiction "is to be 'invoked sparingly, as it often results in added expense and delay.'" *Alpharma, Inc.*, 411 F.3d at 938.  However, "[c]ourts have consistently held that claims of unjust and unreasonable practices under 47 U.S.C. § 201(b) fall within the primary jurisdiction of the FCC." *Scott v. Pub. Comm. Servs.*, 2012 WL 381780, at *3 (E.D. Mo. Feb. 6, 2012).

Defendants correctly contend that these cases involve issues that are within the FCC's field of expertise and that are often referred to the FCC's primary jurisdiction. Perhaps in a more typical case the Court might be inclined, on that basis alone, to employ

the doctrine of primary jurisdiction.  However, these cases are not typical.  Going back to the filing of the original *Wright* complaint in the D.C. District Court, the claims at the core of the instant cases have already been pending in one form or another for nearly fifteen years.

During oral argument, counsel for both Defendants sought to allay the Court's concern in this regard by estimating that the FCC might conclude its related rulemaking proceedings within half a year from now.  However, counsel also hastened to add that they cannot speak for the FCC.  The Court would like to be so optimistic, but given the enormous length of time the last rulemaking proceedings lasted, the Court fears such optimism might be naïve.  Fortunately, although the FCC obviously has much more profound expertise than the Court in these matters, the FCC has already made available a good deal of that expertise through its *IRO and FNPRM*, its November 2013 denial of Defendants' stay petitions, and its *FNPRM 2*.  At any rate, the Court believes that even if it could be confident the FCC would resolve its rulemaking proceedings within the next several months, that would simply weigh all the more heavily against primary jurisdiction referral; after all, in such an event the Court would have available to it—prior to ruling on any class certification motions in the instant cases—even *more* published agency expertise on the central issues than it does now.

Both Defendants have also asked this Court to stay proceedings on *all* claims in the instant cases pending resolution of the D.C. Circuit appeal and the FCC rulemaking proceedings, pursuant to this Court's general power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *United Fire & Cas. Co. v. Evers & Whatley Elec., Inc.*, 2007 WL 1793576, at *3

(W.D. Ark. June 19, 2007). "This power calls for the exercise of judgment, which must weigh competing interests and maintain an even balance between those interests. If there is even a fair possibility that a stay will cause damage to someone else . . . the moving party [must] clearly demonstrate hardship or inequity if it is required to go forward." *Georgia-Pac. Consumer Prods., LP v. Myers Supply, Inc.*, 2009 WL 256109 (W.D. Ark. Feb. 3, 2009).

The only hardship or inequity that Defendants have demonstrated they might suffer if required to go forward is the risk that the outcomes of the pending proceedings in the D.C. Circuit or FCC might moot Plaintiffs' claims, causing the time and expense of discovery in the instant cases to have been a waste. Although this is a legitimate concern, the Court believes it does not outweigh the risk that a stay pending the related proceedings' resolution would simply delay Plaintiffs' day in Court for many years longer than it has already been postponed. Defendants' Motions for primary jurisdiction referral and stay are **DENIED**.

## B. Securus' Motion to Dismiss and Strike Claims Barred by the Statute of Limitations

Securus argues that Mojica's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) and stricken under Rule 12(f) to the extent that the claims reach beyond the two-year limitations period in 47 U.S.C. § 415. To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement exists to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all factual allegations set forth in the Complaint by Mojica

as true, construing the pleadings in the light most favorable to Mojica and drawing all inferences in her favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In summary, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

As will be apparent *infra*, the Court has reviewed certain filings from the *Wright* lawsuit, as well as the FCC's *IRO and FNPRM*, while considering Securus' Rule 12(b)(6) Motion. The *Wright* lawsuit and the *IRO and FNPRM* are explicitly discussed at great length in Mojica's complaint. On a Rule 12(b)(6) motion, the Court "may consider . . . matters of public and administrative record referenced in the complaint." *Great Plains Trust Co. v. Union Pac. R. Co.*, 492 F.3d 986, 990 (8th Cir. 2007). Accordingly, these matters are not "outside the pleadings" within the meaning of Fed. R. Civ. P. 12(d), and their consideration by the Court does not convert Securus' Motion to Dismiss into a motion for summary judgment.

"[S]triking a party's pleadings is an extreme measure, and, as a result . . . motions to strike under Fed. R. Civ. P. 12(f) are viewed with disfavor and are infrequently granted." *Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000). "[I]n many cases, a motion to strike or dismiss a plaintiff's class allegations prior to discovery on class-related issues and prior to the submission of a motion for class certification would be premature." *Knowles v. Standard Fire Ins. Co.*, 2013 WL 6497097, at *2 (W.D. Ark. Dec. 11, 2013). However, this Court "has 'liberal discretion' when deciding whether to strike any portion of a pleading" under Rule 12(f), and "may strike class allegations when they involve 'a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion.'" *Id.* A court may strike or dismiss class claims that do not meet the requirements of Rule 23. *See id.*

Securus raises three arguments in support of its Motion:

> <u>First</u>, . . . the filing of a 2000 consumer class action does not toll the statute of limitations against Securus, an unnamed party to that action. <u>Second</u>, even if Securus had been a party to the 2000 action, the case was dismissed without prejudice and cannot toll the statute of limitations as a matter of law. <u>Third</u>, even assuming that Plaintiff's claims are now ripe for adjudication, "ripeness" is a matter for the courts, not Plaintiff, to decide and therefore does not excuse Plaintiff's failure to file a complaint prior to August 2014.

(Case No. 5:14-cv-5258, Doc. 11, pp. 9-10).

With regard to Securus' first argument, Mojica's Complaint alleges that "Securus was formed through the 2004 acquisition of Evercom Systems, Inc. . . . and T-Netix, Inc." *Id.* at Doc 1., ¶ 6. Evercom was a named defendant in the *Wright* lawsuit, *id.* at Doc. 18-2, p. 4, and as counsel for Securus conceded during oral argument on this Motion at the Case Management Hearing, Securus inherited Evercom's liabilities through that transaction. As the Arkansas Supreme Court observed in *Ford Motor Co. v. Nuckolls*:

The general rule is that, after a merger, the resulting corporation is liable for the debts of the other corporation.  ["]Indeed, it has been said that public policy requires that the obligations of the extinguished corporation in a merger survive as obligations of the surviving corporation.  Corporations cannot by merger or consolidation escape the obligation to pay debts incurred before the merger or consolidation or defeat the right of their creditors to subject their property to the satisfaction of such debt.["]

320 Ark. 15, 27 (1995) (quoting 19 Am. Jur. 2d *Corporations* § 2715 (1986).

With regard to Securus' second argument, as counsel for Securus also conceded during oral argument, the *Wright* lawsuit ultimately was *not* dismissed without prejudice. It was *initially* dismissed without prejudice under the doctrine of primary jurisdiction, *see Wright*, D.D.C. Case No. 1:00-cv-00293, Doc. 94, pp. 1, 14-15, but on motion for reconsideration the dismissal was converted to a stay pending resolution of related proceedings before the FCC, *see id.* at Doc. 105, and then eventually the *Wright* case was administratively closed due to inaction.  "The filing of a class action tolls the statute of limitations as to all asserted members of the class . . . ." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350 (1983) (internal quotation marks omitted).  "Once the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied." *Id.* at 354.  Therefore, if Mojica is a member of the *Wright* putative class, then her claims in the instant case are not barred by the statute of limitations.

In its Reply, and again at oral argument, Securus indirectly challenges Mojica's membership in the *Wright* putative class by arguing that the *Wright* complaint did not allege the same causes of action as are alleged in Mojica's Complaint.  *See* Case No. 5:14-cv-5258, Doc. 21, pp. 11-12.  However, this argument is belied by the plain language of the *Wright* and Mojica complaints.  It is true that the *Wright* complaint alleges

constitutional and Sherman Act violations that are not alleged in Mojica's Complaint. But that does not change the fact that *both* complaints allege that Securus or its predecessor obtained telephone service monopolies at correctional facilities, and exploited those monopolies by charging unjust and unreasonable rates for outgoing calls in violation of 47 U.S.C. § 201(b), thereby unjustly enriching itself. *Compare id.*, Doc. 18-2, ¶¶ 121-35 (*Wright* complaint) *with id.*, Doc. 1, ¶¶ 10-25, 43-54 (Mojica's Complaint).

As for Securus' argument concerning ripeness, Mojica does not need an "excuse" for "fail[ing] to file a complaint prior to August 2014," *id.*, Doc. 11, pp. 9-10, if her Complaint was timely filed under the statute of limitations.[5]  Securus' Motion to Dismiss and Strike Claims Barred by the Statute of Limitations is **DENIED**.

### C. Securus' Motion to Strike Unjust Enrichment Claim

Securus argues that Mojica's unjust enrichment class-action claim should be stricken from the Complaint under Fed. R. Civ. P. 12(f) because it cannot satisfy the requirements of commonality under Rule 23(a)(2) or predominance under Rule 23(b)(3). Specifically, Securus argues that commonality and predominance are both destroyed by outcome-determinative differences in the law of unjust enrichment between states. Mojica responds with two arguments: (1) the motion is premature because these issues are more appropriately resolved at the class certification stage; and (2) the law of unjust enrichment is not materially different between states as to predominate over the issues

---

[5] Securus does not appear to be arguing that laches should apply. During oral argument, the Court asked counsel for Securus whether they were arguing that "some sort of laches concept" should apply because Mojica had been "sitting on her rights all this time." Counsel for Securus responded: "I raise ripeness simply as rebuttal to plaintiff's opposition on the statute [of limitations] issue. They stated 'we couldn't have filed sooner, we would have been unripe.' . . . In terms of sitting on your rates [sic], again, Ms. Mojica had no right to a lower rate, ever."

that are common to the class members.  The legal standard on motions to strike is discussed in the preceding subsection of this Order.

The Court agrees with Mojica that the Motion is premature.  Even if "[t]he law of unjust enrichment varies from state to state in material respects," *Tyler v. Alltel Corp.*, 265 F.R.D. 415, 423 (E.D. Ark. 2010), and even if the alleged violations of law affected class members in dozens of states, that would not be the end of the matter.[6]  This Court would still need to do a fact-intensive choice-of-law analysis to determine which states' laws apply.  *See Tyler*, 265 F.R.D. at 423-27.  Depending on which choice-of-law principles are used and on which facts are developed, the number of states whose law applies could conceivably be as low as one or as high as several dozen.

Thus far, the parties have not briefed choice-of-law principles at all.  "Although there are, or may be, conflicts of law governing Plaintiffs' claims, it is premature for the Court to address that issue presently.  Without further discovery, it is difficult to determine which state laws will be implicated in the class action suit."  *Rios v. State Farm Fire and Cas. Co.*, 469 F. Supp. 2d 727, 741 (S.D. Iowa 2007).  Either Defendant may raise the unjust enrichment issues again at the class certification stage if they believe it would be appropriate to do so.  At that time, all parties should be prepared to argue which choice-of-law principles apply and which states' unjust enrichment laws apply.  Securus' Motion to Strike Unjust Enrichment Claim is **DENIED**.

---

[6] The Court makes no finding at this time as to whether the law of unjust enrichment varies materially between states, or as to how many different states are implicated by the allegations in Mojica's Complaint.

### D.  Securus' Motion for More Definite Statement

Securus wants this Court to compel Mojica to "identify the correctional facility from which she received collect, inmate-initiated telephone calls," pursuant to Fed. R. Civ. P. 12(e).  (Case No. 5:14-cv-5258, Doc. 11, p. 18).  Mojica responds that the Motion should be denied because this information is easily obtainable through the discovery process. The Court agrees with Mojica.  *Cf. Mills v. Chase Manhattan Bank, USA N.A.*, 2009 WL 1231990, at *1 (W.D. Ark. May 2, 2009).  Mojica shall provide this information to Securus **within five days from this Opinion and Order's entry**.  Securus' Motion for More Definite Statement is **DENIED**.

### III.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Securus Technologies, Inc.'s Partial Motion to Dismiss, Motion to Strike, and Motion to Stay or, in the Alternative, Motion for More Definite Statement (Case No. 5:14-cv-5258, Doc. 10) and Defendant Global Tel*Link Corporation's Motion for Primary Jurisdiction Referral and Stay (Case No. 5:14-cv-5275, Doc. 16) are both **DENIED.**

**IT IS SO ORDERED** on this 29ᵗʰ day of January, 2015.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE