IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SUSAN MOJICA and THOMAS MOJICA                                    PLAINTIFFS

V.                                    CASE NO. 5:14-CV-5258

SECURUS TECHNOLOGIES, INC.                                        DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

Currently before the Court are Plaintiffs Susan Mojica's and Thomas Mojica's[1] Motion for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel (Doc. 118) and Memorandum of Law in Support (Doc. 118-3); Defendant Securus Technologies, Inc.'s ("Securus") Opposition (Doc. 128); Plaintiffs' Reply (Doc. 142); and Notices of Filing Supplemental Authority from Plaintiffs (Docs. 180, 184) and Securus (Doc. 186). For the reasons given below, Plaintiffs' Motion is **GRANTED**.

## I.  BACKGROUND

Plaintiffs initiated this lawsuit against Securus on August 14, 2014 as a putative class action.  *See* Doc. 1.  They allege that Securus obtained exclusive contracts to provide telephone services to inmates at correctional facilities throughout the United States in exchange for the payment of kickbacks to those correctional facilities known as "site commissions," and exploited these monopolies by charging unjust and unreasonable rates to users of inmate calling services, including Plaintiffs, in violation of the Federal Communications Act ("FCA") as well as common law.  *See* Doc. 171, ¶¶ 1, 11–22.

---

[1] When this Motion was filed, Mr. Mojica had moved to intervene but since the Court had not yet ruled on his motion, Mr. Mojica was technically not yet a named Plaintiff in this action.  The Court subsequently granted his motion to intervene.  *See* Doc. 169, pp. 2–5.

Specifically, Plaintiffs contend that Securus charged them excessive rates to cover the costs of site commissions it paid to correctional facilities, and charged them deposit fees that unreasonably exceeded the cost of processing deposits into prepaid accounts. *See* Doc. 118-3, p. 23. Plaintiffs seek to recover these allegedly unjust rates and fees through two claims for relief against Securus—one brought under 47 U.S.C. §§ 201(b) and 206, and one brought under the common-law doctrine of unjust enrichment. *See* Doc. 126, ¶¶ 43–55.

Plaintiffs filed their Motion for Class Certification on June 13, 2016. *See* Doc. 118. They seek certification of a nationwide class for their claims under the FCA, defined as:

> All persons in the United States who, at any time within the applicable limitations period: (1) paid to use inmate calling services provided by Securus Technologies, Inc. (including its predecessors) to make or receive one or more interstate phone calls from a correctional facility during a period of time when Securus Technologies, Inc. paid the facility[2] a commission of any type in connection with the interstate calls; and/or (2) paid deposit fees to Securus Technologies, Inc. in order to fund a prepaid account used to pay for any interstate calls.

(Doc. 118, ¶ 1). Plaintiffs also seek certification of two subclasses for their claims under the common law of unjust enrichment, defined as:

> **The Arkansas UE Subclass:** All persons who, while a resident of Arkansas, California, Connecticut, Hawaii, Indiana, Iowa, Michigan, Nebraska, New Hampshire, South Carolina, Vermont or West Virginia, within the applicable limitations period, paid to use inmate calling services provided by Securus Technologies, Inc. (including its predecessors) to make or receive one or more interstate phone calls from a correctional facility during a period of time when Securus Technologies, Inc. paid the facility a commission of any type in connection with the interstate calls.

---

[2] Securus often contracts with correctional agencies, such as a state's Department of Corrections, that oversee multiple correctional facilities. For purposes of this Motion, and consistent with industry practices, the term "facilities" or "facility" refers to the correctional facilities as well as the corresponding correctional agency overseeing the correctional facilities.

**The Tennessee UE Subclass:** All persons who, while a resident of Alaska, Minnesota, Ohio, Tennessee, Utah or Washington, within the applicable limitations period, paid to use inmate calling services provided by Securus Technologies, Inc. (including its predecessors) to make or receive one or more interstate phone calls from a correctional facility during a period of time when Securus Technologies, Inc. paid the facility a commission of any type in connection with the interstate calls.

*See id.* at ¶ 2.[3]

Plaintiffs ask that Ms. and Mr. Mojica be appointed as representatives of the FCA Class and that each, respectively, be appointed as representative of the Arkansas and Tennessee UE Subclasses.  They also ask that the Court appoint the law firms of Kessler Topaz Meltzer & Check, LLP ("KTMC"), Saltz Mongeluzzi Barrett & Bendesky P.C. ("SMBB"), Cohen Milstein Seller & Toll, PLLCA ("CM"), and Law Office of Susan L. Burke, PLLC ("Burke") as Co-Lead Class Counsel serving on a Co-Lead Class Counsel Committee, with KTMC serving as the Chair of such Committee, and Amy C. Martin, Esq.[4] as Liaison Class Counsel.  And upon such certification and appointment, they ask that this Court direct that Notice to the Class be disseminated in accordance with a Notice program to be submitted to the Court for the Court's approval.  The Motion has been fully briefed, and the Court heard oral argument on it on November 30, 2016.  It is now ripe for decision.

---

[3] Although the original UE Subclass definitions proposed in Plaintiffs' Motion each included deposit-fee criteria identical to that in the FCA Class definition, Plaintiffs' counsel orally withdrew its Motion with respect to the unjust enrichment claim for deposit fees on November 30, 2016.  *See* Doc. 175, pp. 89–90.

[4] Plaintiffs originally requested that Ms. Martin's law firm be appointed as Liaison Class Counsel, but she has since left that firm.

## II.  LEGAL STANDARD

The party seeking class certification bears the burden of proving that Rule 23's requirements are satisfied.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The district court retains "broad discretion in determining whether to certify a class, recognizing the essentially factual basis of the certification inquiry and . . . the district court's inherent power to manage and control pending litigation."  *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 616 (8th Cir. 2011) (internal quotations and citations omitted).  A district court must undertake "a rigorous analysis" to ensure that the requirements of Rule 23 are met.  *Gen. Tel. Co. of the Sw. v. Falcon*, 467 U.S. 147, 161 (1982).  "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart Stores*, 564 U.S. at 351 (2011).  The district court may "resolve disputes going to the factual setting of the case" if necessary to the class certification analysis.  *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005).

An implicit requirement for any class certification inquiry involves a court's assessment as to the *ascertainability* of the class.  The description of a proposed class must be sufficiently *definite* to permit class members to be identified by objective criteria. *See Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996–97 (8th Cir. 2016).  "The requirement that a class be clearly defined is designed primarily to help the trial court manage the class.  It is not designed to be a particularly stringent test, but plaintiffs must at least be able to establish that the general outlines of the membership of the class are determinable at the outset of the litigation."  *Bynum v. Dist. of Columbia*, 214 F.R.D. 27, 31 (D.D.C. 2003).

Under Rule 23, certifying a class action requires a two-step analysis.  *First*, the Court must determine whether:

- the class is so numerous that joinder of all members is impracticable ("*numerosity*");

- there are questions of law or fact common to the class ("*commonality*");

- the claims or defenses of the representative parties are typical of the claims or defenses of the class ("*typicality*"); and

- the representative parties will fairly and adequately protect the interests of the class ("*fair and adequate representation*").

Rule 23(a)(1)–(4).  *Second*, the Court must determine whether:

- questions of law or fact common to class members predominate over questions affecting only individual members ("*predominance*"); and

- a class action is superior to other available methods for fairly and efficiently adjudicating the controversy ("*superiority*").

Rule 23(b)(3).

## III.  DISCUSSION

### A.  Threshold Issues

#### 1.  Divergence between Class Certification Motion and Complaint

Before beginning the Rule 23 analysis, the Court must address several threshold issues raised by Securus.  The first is an argument that Plaintiffs' Motion should be denied because they "seek[] to certify six entirely new classes that [they] concealed from Securus and that differ drastically from the single class defined in [their] complaint."  (Doc. 128, p. 12).  The Court finds this argument utterly unavailing, because the class and subclasses

Plaintiffs are seeking to certify are *narrower* than the one set out in both the original and amended complaints.  *Compare* Doc. 1, ¶ 32, *and* Doc. 171, ¶ 33, *with* Doc. 118, ¶¶ 1–2.  There are no claims or potential class members implicated by Plaintiffs' Motion of which Securus has not been abundantly aware from the moment it was served with the original complaint.  There is no lack of notice, there is no unfair prejudice to Securus here, and there is no basis for a finding of bad faith on the part of Plaintiffs.

## 2.  Standing

The second threshold argument raised by Securus is that the class cannot be certified because it contains members who lack standing.  "Although federal courts do not require that each member of a class submit evidence of personal standing, a class cannot be certified if it contains members who lack standing."  *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010) (internal quotation marks omitted).  "Or, to put it another way, a named plaintiff cannot represent a class of persons who lack the ability to bring a suit themselves."  *Id.*

Here, Securus contends that "a massive proportion of each putative class lacks standing, because they are current or former inmates who have failed to exhaust available administrative remedies," (Doc. 128, p. 20), under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).  The Court also finds this argument to be fruitless.  It is well-settled black-letter law "that failure to exhaust administrative remedies is an *affirmative defense* under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."  *Jones v. Bock*, 549 U.S. 199, 216 (2007) (emphasis added).  It simply has nothing to do with standing.  Securus has provided no evidence that the PLRA even applies to the named Plaintiffs in this case; and to whatever

extent this affirmative defense may be validly raised against some other individual putative class members, that issue goes to predominance, not standing.

### 3.  Class Definition and Ascertainability

The final threshold issue to take up is the matter of class definition and ascertainability, mentioned *supra* in Section II of this Order.  The Court begins its discussion of this issue with the observation that the Eighth Circuit, "unlike most other courts of appeals, has not outlined a . . . separate, preliminary requirement" of ascertainability that would require plaintiffs to demonstrate a method of identifying class members that is administratively feasible.  *See Sandusky Wellness*, 821 F.3d at 996. Rather, the Eighth Circuit simply adheres to a rigorous analysis of the Rule 23 factors, and while it recognizes that this analysis necessarily entails that a class be "adequately defined and clearly ascertainable," the focus of this threshold inquiry is on whether the proposed class definition identifies class members by objective criteria, rather than on the administrative concerns that are already taken into account by the Rule 23(b)(3) factors of predominance and superiority.  *See id.*  Thus, a proposed class of "persons who because of their poverty are unable to pay for utility services" is *not* adequately defined and clearly ascertainable, because "the vagueness of its description" makes it "impossible to determine" who its members are.  *Ihrke v. N. States Power Co.*, 459 F.2d 566, 573 (8th Cir. 1972), *vacated due to mootness*, 409 U.S. 815 (1972).  But a proposed class of "[a]ll persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages regarding lead testing services by or on behalf of Medtox, and (3) which did not display a proper opt out notice" *is* adequately defined and clearly ascertainable because it uses objective criteria to identify class members, regardless of

how administratively difficult it may be to locate those class members in practice.  *See Sandusky Wellness*, 821 F.3d at 996–97.  Again, this does not mean administrative burdens are irrelevant to a class certification inquiry; it just means inquiry into administrative burdens should be shaped and guided by the Rule 23(b)(3) factors that properly implicate them, rather than being elevated to a separate, preliminary requirement for a heightened showing that has no basis in the text of Rule 23.

Bearing these observations in mind, it is obvious that Plaintiffs' proposed class in the instant case is adequately defined and clearly ascertainable.  Whether a person "paid to use inmate calling services provided by Securus Technologies, Inc. (including its predecessors) to make or receive one or more interstate phone calls from a correctional facility during a period of time when Securus Technologies, Inc. paid the facility a commission of any type in connection with the interstate calls" is a straightforward objective test.  The same is true for whether a person "paid deposit fees to Securus Technologies, Inc. in order to fund a prepaid account used to pay for any interstate calls." Neither of these definitions requires any sort of subjective valuation of anyone's state of mind, level of indigence, etc. in order to determine whether he or she is a member of the proposed class.

Securus's arguments that the definitional and ascertainability requirements are not met, are essentially arguments that this Court should impose a heightened threshold inquiry into administrative burdens that the Eighth Circuit has explicitly foreclosed. Securus offers four such arguments, three of which can be considered as different variations on the same theme.  Under those latter three arguments, specifically, Securus contends that the records of who paid for traditional collect calls, of who paid for calls

made with physical prepaid calling cards, and of who paid deposit fees for placing money on inmates' debit accounts, are all not stored in-house at Securus, but rather are kept by the local exchange carriers who billed and collected the collect charges, the correctional facilities who sold the prepaid calling cards, and the credit-card providers used by the depositors, respectively. *See* Doc. 128, pp. 17–20. But all three of these arguments simply boil down to a complaint about the number of administrative steps required to identify some class members; they have no bearing on whether there are objective criteria by which class members may be identified.

Securus's only other argument on the issue of definition and ascertainability is that "there is no one-to-one correlation between credit card fees and interstate calls; the Court must do a separate analysis to match a credit card payor to an interstate call" distinct from intrastate calls made on the same account. *See* Doc. 128, p. 19 (internal alterations and quotation marks omitted). But this misses the point. The pertinent objective criteria in the class definition here is whether the prepaid *account* in question was used to pay for "any" interstate calls. Securus tracks fees that are charged to users' accounts, *see, e.g.*, Doc. 118-4, p. 747, and Securus's call detail records identify whether interstate calls were made on users' accounts, *see, e.g., id.* at 372. The class definition here does not require one to analyze what percentage of the account's calls were interstate, or what percentage of the deposit fees charged to that account were economically attributable to said interstate calls, in order to determine whether a person who paid deposit fees to fund that account is a class member. One needs simply to determine whether *any* interstate calls were made on that account, period. This is a simple, objective, well-defined, and easily ascertainable criterion. Because Plaintiffs' proposed class is adequately defined

and clearly ascertainable, the Court will proceed to consider the four Rule 23(a) factors of numerosity, commonality, typicality, and fair and adequate representation.

### B.  Numerosity, Commonality, Typicality, and Fair and Adequate Representation

The proposed class in this case is indisputably numerous, likely containing at least a hundred-thousand individuals, and quite possibly many more.  Accordingly, Securus has not contested this factor.  *See* Doc. 175, p. 57.

Likewise, there are questions of law or fact common to the class.  Plaintiffs allege that Securus recoups the site commissions it pays incarceration facilities through the rates it charges users of its inmate calling services, that Securus charges fees for depositing funds in inmate prepaid accounts that grossly exceed the cost of processing those deposits, and that these practices are the result of nationwide policies rather than of ad hoc negotiations with individual consumers of Securus's services.  Plaintiffs further contend that these practices are unjust, unreasonable, and inequitable under both the FCA and the common law of unjust enrichment.  These factual allegations and legal arguments do not depend in any way on the individual circumstances surrounding individual payments by class members; they are contentions that are common to the class as a whole.  And for each of these contentions, "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350.

It is instructive to contrast the claims in this case with those in *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370 (8th Cir. 2013).  In *Luiken*, the district court had certified a class of individuals employed as delivery drivers for Domino's Pizza, who sought to recover fixed delivery charges paid by customers to Domino's which the class members

contended were "gratuities" that had been wrongfully withheld from them under Minnesota statutory and administrative law.  *See* 705 F.3d at 372–73.  The Eighth Circuit reversed, holding that commonality and predominance were not satisfied, because under the plain language of the statutory definition at issue, whether a monetary contribution was a "gratuity" depended on the factual context under which a given contribution was made— and in particular, on whether a "reasonable" person making a contribution would construe that contribution as being made "for personal services," given the factual context in which it was paid.  *See id.*  But in the instant case, a class member's uniquely individual circumstances are utterly irrelevant to the questions of whether it is just or reasonable for Securus to recoup site commissions from customers of inmate calling services, or whether it is just or reasonable for Securus to charge deposit fees that exceed processing costs by $x$, $y$, or $z$ amounts.  Under Plaintiffs' theory of the case, the class rises or falls together.  If Plaintiffs ultimately prevail, then individual class members will certainly recover different amounts in accordance with how much they have paid to Securus; but this is no different from countless other properly certified class actions.  It would simply be a matter of using the same records to determine the amount one may recover, as were used to determine whether one is a class member in the first place.

Securus argues that the classes lack common issues of law or fact because many different institution-specific factors go into how site commissions "are established, applied, calculated, and paid."  *See* Doc. 128, pp. 23–24.  Likewise, Securus points out that the cost of processing deposit fees varies in accordance with the vendor doing the processing, the type of transaction being processed, the volume of transactions being processed, etc.  *See id.* at 25.  But none of this changes the fact that Plaintiffs are

contending that it is unjust and unreasonable for Securus to recoup site commissions from users of inmate calling services, or to charge deposit fees that exorbitantly exceed their processing costs, *regardless of the amount* of site commissions or processing costs charged to any given class member.  Naturally, Securus disagrees.  And if at some point down the line that disagreement is resolved in Securus's favor, perhaps at the close of merits discovery, or even at trial, then such an occasion would be an opportune moment for Securus to move for decertification; but that is not where we are right now.

Turning to the third factor under Rule 23(a): Plaintiffs' claims are quite clearly typical of the proposed class's claims, because all proposed class members' claims, including Plaintiffs', "are based on the same legal or remedial theory," *Paxton v. Union Nat. Bank*, 688 F.2d 552, 561–62 (8th Cir. 1982), which is that Securus violated the FCA and the common law of unjust enrichment by charging them exorbitant rates and deposit fees for interstate phone calls.  Securus disagrees with regard to Mr. Mojica, arguing that he "cannot represent a class of people who paid credit card fees, because he never paid them." (Doc. 128, pp. 30–31.)  And indeed, it appears that Mr. Mojica's individual claims arise only from Securus's recoupment of site commissions through the rates charged to him, and not from any deposit fees.

But the Court views this argument as a bit of a red herring, for two reasons.  First, there is not, as Securus implies here, *see* Doc. 128, p. 31, any problem with *standing* on the part of Mr. Mojica.  He has standing to bring claims under both the FCA and unjust-enrichment counts for the fees that he *did* pay, even if deposit fees happen not to be among them.  Second, Plaintiffs have not proposed any classes or subclasses that consist solely of individuals who have paid deposit fees.  Every single proposed class

asserts claims for persons who "(1) paid to use inmate calling services provided by Securus . . . *and/or* (2) paid deposit fees to Securus . . . ."  (Doc. 118, ¶¶ 1–2).  Thus, Mr. Mojica *is* indisputably a member of the classes he seeks to represent, and furthermore, in every class there will be many members, like Mr. Mojica, who have only paid one or the other type of fee being challenged in this lawsuit.

Securus raises these same arguments to challenge Mr. Mojica's adequacy to represent the proposed classes under the fourth Rule 23(a) factor; the Court rejects those arguments under this factor for the same reasons just given.  "Typicality" and "adequacy" do not mean "perfectly identical"; they simply mean "typical" and "adequate."  *In re Uponor, Inc., F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1064 (8th Cir. 2013) ("Class representatives need not share identical interests with every class member, but only common objectives and legal and factual positions.  All class members here share the common objective of recovering costs associated with replacing defective brass plumbing fittings in their homes." (internal quotation marks and citation omitted)).  The Court is easily persuaded that both Plaintiffs will fairly and adequately represent the interests of the class.  Plaintiffs' interests are aligned with those of the class members, they have vigorously prosecuted their own interests through qualified counsel[5] up through the present moment in this litigation, and the Court sees no reason to believe this vigorous prosecution will abate following class certification.  *See Paxton*, 688 F.2d at 562–63.

In conclusion, then, the Court finds that all four Rule 23(a) factors of numerosity, commonality, typicality, and fair and adequate representation weigh in favor of class

---

[5] Lead counsel for Plaintiffs has extensive experience and success prosecuting class action cases, and Securus has not challenged or disputed the qualifications of Plaintiffs' counsel.

certification here.  Accordingly, the Court will proceed to the final step of class certification analysis, and consider the Rule 23(b)(3) factors of predominance and superiority.

### C.  Predominance and Superiority

"The Rule 23(b) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  The Eighth Circuit has explained that:

> When determining whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings, but that inquiry should be limited to determining whether, *if the plaintiffs' general allegations are true, common evidence could suffice to make out a prima facie case for the class.*  While limited in scope, this analysis should also be rigorous.

*In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011) (emphasis added) (internal citations and quotation marks omitted).  The Court believes common evidence could suffice to make out a prima facie case that, as described in the preceding subsection of this Order, Securus recoups the site commissions it pays incarceration facilities through the rates it charges users of its inmate calling services, charges fees for depositing funds in inmate prepaid accounts that grossly exceed the cost of processing those deposits, engages in these practices pursuant to nationwide policies, and that these practices are unjust and unreasonable.

Securus offers seven arguments to contest that common issues predominate among class members.  The first is that it is not necessarily or per se unreasonable for Securus to pass along the cost of site commissions to the consumers of its inmate calling services.  *See* Doc. 128, p. 26.  But as discussed in the preceding subsection in the context of commonality, this is simply a disagreement as a matter of law about the merits of Plaintiffs' theory of liability.  While the Court appreciates that class certification analysis

14

frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart Stores*, 564 U.S. at 351, that does not mean it would be appropriate for this Court to use an order on a class certification motion as a vehicle to essentially grant summary judgment, on the basis of a woefully incomplete record for that purpose, against a theory of liability that is not obviously foreclosed as a matter of law, and under a legal standard where the burden rests on Plaintiffs rather than on the party who is essentially seeking summary judgment.  Again, if Securus ultimately prevails on this issue, then that event might warrant decertification of the class; but we will cross that bridge when we come to it.

Second, Securus argues that individual issues predominate with regard to credit card fees, because "the fee records are separate from the interstate calling records and Securus has never correlated the two."  *See* Doc. 128, p. 27.  But the Court sees no reason why correlation of these records, which are stored in electronic databases, *see, e.g.*, Doc. 118-4, pp. 64–65, 73, 84–85, 224–25, cannot be accomplished through an automated computing process.

Third, Securus argues that individual issues predominate with respect to the previously-discussed matter of failure to exhaust administrative remedies.  *See* Doc. 128, pp. 26–27.  As noted above, failure to exhaust administrative remedies is an affirmative defense, and it is one that strikes the Court as utterly untenable, at least on the basis of the record currently before it.  There is no evidence in the record that there is any administrative remedy that would be available to any class members in any realistic or viable sense.  The Court cannot conceive of what the grievance process would even look like for prisoners wishing to contest rates they are being charged by Securus, other than

submitting a grievance form to the correctional facility which would then, in turn, either forward it to Securus and wash their hands of it, or else simply say "sorry, but there is nothing we can do."  "[A]n administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).

Fourth, Securus argues that "individual questions arise under the voluntary payment doctrine and bar certification of any [deposit fee] claim."  (Doc. 128, p. 28).  This Court has already held that the voluntary payment doctrine does not apply to Plaintiffs' FCA claims, *see* Doc. 169, p. 9, and the argument is otherwise mooted by Plaintiffs' withdrawal of their Motion with respect to the unjust enrichment claim for deposit fees, *see* Doc. 175, pp. 89–90.

Fifth, Securus argues that "the fatal errors, omissions, and faulty methodology in [Plaintiffs' Expert] Report further demonstrates the lack of predominance."  (Doc. 128, p. 28).  This argument seems to the Court little more than a gratuitous swipe; even assuming, purely for the sake of argument, that Plaintiffs' expert had completely neglected to undertake any sort of investigation or competent analysis of Securus's rates, such neglect would "demonstrate" precisely nothing about those rates' complexity or the extent to which common issues predominate.

Sixth, Securus argues that choice-of-law principles require applying the law of the state of an inmate claimant's residence, rather than the law of the state where he was incarcerated when the transactions in question occurred; this, the argument continues, destroys predominance—and also deprives the Tennessee subclass of a representative (since Mr. Mojica was not a Tennessee resident while he was incarcerated there).  *See*

Doc. 128, pp. 29–30, 34–35.  The Court disagrees, and is unaware any legal authority to support this argument.  Indeed, the only two cases on which Securus relies here, actually *negate* the very choice-of-law principle Securus urges this Court to adopt.  *See Tyler v. Alltel Corp.*, 265 F.R.D. 415, 423 (E.D. Ark. 2010) ("If her claims sound in contract, then . . . general contract choice-of-law principles require that *consumer transactions be governed by the law of the state in which the transaction occurred* or the state in which the consumer's billing address is located.  If her claims sound in tort, then under Arkansas's tort choice-of-law principles . . . the laws of twenty-five different states would still apply because the claims arise out of *consumer transactions that occurred in different states*." (emphasis added)); *Jarrett v. Panasonic Corp. of N. Am.*, 8 F. Supp. 3d 1074, 1087–88 (E.D. Ark. 2013) (discussing and quoting *Tyler*: "the court concluded that 'the law of each state *where the consumer transaction occurred*, or where the consumer lives, should govern that transaction'").

However, this argument does raise a problem with the two UE Subclass definitions proposed by Plaintiffs: each of those definitions uses the words "while a resident of" to describe the relationship between its class members and the states where those class members allegedly suffered the wrongs they are seeking to remedy.  The Court believes this language could lead to unnecessary confusion, because some states have laws that explicitly preclude individuals from acquiring residency solely by reason of being incarcerated there.  *See, e.g.*, Tenn. Code Ann. § 2-2-122(a)(7) ("A person does not gain or lose residence solely by reason of the person's presence or absence . . . while kept in an institution at public expense, or while confined in a public prison[.]").  However, this

problem is easily remedied by simply substituting the word "in" for the words "a resident of" in both of the UE Subclass definitions.

Seventh, and finally, Securus argues that outcome-determinative differences in state unjust enrichment law frustrate predominance. *See* Doc. 128, pp. 32–34. The Court disagrees, because the critical issue here for purposes of predominance is not whether the elements vary, but rather whether common evidence can be used to satisfy them in a *prima facie* case. Here, common evidence can suffice, because none of the variances in elements that Securus has pointed to requires individualized inquiry into the unique circumstances of particular class members. *See generally* Doc. 128-2, pp. 167–78 (chart prepared by Securus surveying differences among states' unjust-enrichment elements). No matter which state's elements are used, the pertinent facts as alleged by Plaintiffs, and the evidence they intend to offer, are the same for every putative class member: that Securus exploited its exclusive contracts for provision of inmate calling services at correctional facilities by recouping from its customers the site commissions it paid those facilities, or by charging its customers deposit fees on prepaid accounts that were far in excess of the actual cost for processing those deposits. The Court recognizes that there are many conceivable circumstances where the allegations underlying a putative class action could be such that variances among different states' unjust-enrichment elements would be material. But that does not appear to be the situation in this case.

Ultimately, under the facts of the instant case, variations in unjust enrichment laws from state to state bear much less on the issue of predominance than on the final Rule 23(b)(3) factor—whether a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. And as with predominance, the Court finds

that this factor weighs in favor of class certification.  Given the common evidence that will be used at trial, whatever variances may exist within a particular subclass among different states' elements for unjust enrichment can be adequately addressed through the use of special verdict forms.  Although the verdict forms and accompanying jury instructions in this case might be a little more complicated in this regard than what would be used in separate cases prosecuted on a state-by-state basis, the Court is confident, at least for now, that it is capable of managing this task without confusing the jury, and that the efficiencies realized by consolidating all of these claims into one forum far outstrip the difficulties.

If a class action is not certified, the only other means of which the Court is aware by which class members may prosecute their claims are either to bring individual lawsuits or to lodge individual administrative complaints with the FCC under 47 U.S.C. § 208.  The former alternative is plainly impractical given the low amount of damages suffered by the typical individual class member relative to the prohibitive cost of bringing a lawsuit.  And the latter alternative is plainly inferior to a class action, in light of "the class members' interests in individually controlling the prosecution or defense of separate actions," and "the desirability or undesirability of concentrating the litigation of the claims in [this] particular forum."  Fed. R. Civ. P. 23(b)(3)(A).  Although an administrative proceeding under § 208 may be a far less expensive affair for a claimant than an individual lawsuit would be, it would also be a very rushed affair, *see* § 208(b)(1), in which none of the parties would have the opportunity to conduct the sort of thorough discovery and vigorous prosecution of their respective positions that can be undertaken in this Court.  Finally, the Court is unaware of any other lawsuits already begun against Securus with claims

overlapping those brought by the class members in this case. *See* Fed. R. Civ. P. 23(b)(3)(B); Doc. 118-2, ¶ 45; Doc. 118, ¶¶ 1–2.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs Susan Mojica's and Thomas Mojica's Motion for Class Certification, Appointment of Class Representatives and Appointment of Class Counsel (Doc. 118) is **GRANTED** as follows:

**IT IS ORDERED** that named Plaintiffs Susan Mojica and Thomas Mojica are appointed as representatives of the following class, the "FCA Class," which is certified to pursue a common claim under the FCA:

> All persons in the United States who, at any time within the applicable limitations period: (1) paid to use inmate calling services provided by Securus Technologies, Inc. (including its predecessors) to make or receive one or more interstate phone calls from a correctional facility during a period of time when Securus Technologies, Inc. paid the facility[6] a commission of any type in connection with the interstate calls; and/or (2) paid deposit fees to Securus Technologies, Inc. in order to fund a prepaid account used to pay for any interstate calls.

**IT IS FURTHER ORDERED** that the following subclasses (the "UE Subclasses") are certified to pursue claims for unjust enrichment under the laws of the specified states, with the referenced Plaintiff appointed as the representative of such subclass:

> **The Arkansas UE Subclass (Susan Mojica):** All persons who, while in Arkansas, California, Connecticut, Hawaii, Indiana, Iowa, Michigan, Nebraska, New Hampshire, South Carolina, Vermont or West Virginia, within the applicable limitations period, paid to use inmate calling services provided by Securus Technologies, Inc. (including its predecessors) to make or receive one or more interstate phone calls from a correctional

---

[6] Securus often contracts with correctional agencies, such as a state's Department of Corrections, that oversee multiple correctional facilities. For purposes of this Motion, and consistent with industry practices, the term "facilities" or "facility" refers to the correctional facilities as well as the corresponding correctional agency overseeing the correctional facilities.

facility during a period of time when Securus Technologies, Inc. paid the facility a commission of any type in connection with the interstate calls.

**The Tennessee UE Subclass (Thomas Mojica):** All persons who, while in Alaska, Minnesota, Ohio, Tennessee, Utah or Washington, within the applicable limitations period, paid to use inmate calling services provided by Securus Technologies, Inc. (including its predecessors) to make or receive one or more interstate phone calls from a correctional facility during a period of time when Securus Technologies, Inc. paid the facility a commission of any type in connection with the interstate calls.

IT IS FURTHER ORDERED that the law firms of Kessler Topaz Meltzer & Check, LLP ("KTMC"), Saltz Mongeluzzi Barrett & Bendesky P.C. ("SMBB"), Cohen Milstein Seller & Toll, PLLCA ("CM"), and Law Office of Susan L. Burke, PLLC ("Burke") are appointed as Co-Lead Class Counsel serving on a Co-Lead Class Counsel Committee, with KTMC serving as the Chair of such Committee.  Amy C. Martin, Esq. is appointed as Liaison Class Counsel.

IT IS FURTHER ORDERED that Notice to the Class, in a form approved by the Court, shall be disseminated in accordance with a Notice program to be approved by the Court following consideration of the parties' proposal(s) for the form and manner of Notice, which proposal(s) shall be submitted to the Court within fourteen (14) days of the date of this Order.

IT IS SO ORDERED on this 3rd day of February, 2017.


_/s/ Timothy L. Brooks_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE